UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-151-FDW

| ALFONZO CABALLERO, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| PHILLIP BONEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendants FNU Holder and FNU Smith's Motion for Summary Judgment, (Doc. No. 43). Also pending is Plaintiff's "Request for Review the 3 Videos," (Doc. No. 52), which has been docketed as a motion.[1]

### I. BACKGROUND

*Pro se* Plaintiff's Complaint passed initial review on excessive for and discrimination claims for incidents that allegedly occurred at the Lanesboro Correctional Institution. (Doc. No. 14). However, Plaintiff voluntarily dismissed all the claims except for the claims against Defendants Holder and Smith. See (Doc. No. 33). Defendants Holder and Smith have filed a Motion for Summary Judgment, (Doc. No. 43), that is presently pending before the Court. Plaintiff has filed a Response and Defendants had the opportunity to reply. Plaintiff has also filed a "Request for Review the 3 Videos" that appears to be in the nature of an additional Response and appears to ask the Court to appoint counsel to assist him in this case. (Doc. No. 52).

**(1)** **Complaint** (Doc. No. 1)

---

[1] The English translation of the document, which was originally filed in Spanish, has been docketed in this case. See (Doc. No. 53-5).

1

Plaintiff alleges that he was being escorted to the rec yard in handcuffs when Officer Smith called him a "wetback m.... f....r Mexican," threw him to the floor, placed his knee on Plaintiff's back, held his head still, and beat him by hitting various parts of his body. (Doc. No. 1 at 4). Officers including Defendants Holder and Smith joined in the beating. Plaintiff was not a threat to the officers and did not resist. The beating was an act of retaliation and occurred after a long history of harassment, bias, racial slurs, threats, intimidation, and prejudice toward Mexicans. Plaintiff sustained fractures to his right hand, one foot, and shoulder, and injuries to his left hand, arms, head, and face. He has problems walking due to these injuries. Plaintiff seeks punitive damages of $50,000 from each Defendant.

**(2)** **Defendants' Motion for Summary Judgment** (Doc. No. 43)

Defendants argue that they are entitled summary judgment because Plaintiff failed to exhaust administrative remedies before filing this suit as required by the Prison Litigation Reform Act ("PLRA"). Plaintiff was fully aware of the administrative remedy procedure process because it is part of inmate orientation, it is explained orally to each inmate, and Plaintiff has exhausted several other grievances but failed to do so for the alleged use of excessive force incident at issue. The three grievances that Plaintiff has filed in support of exhaustion fail to satisfy the PLRA's exhaustion requirements.

Further, the objective evidence demonstrates that there is no genuine dispute of material fact that would support Plaintiff's allegation of excessive force. Plaintiff's self-serving allegations lack support and credibility and should be rejected. Plaintiff's claims that he was not doing anything wrong, that he posed no threat to anyone, that Officer Smith instigated the incident based on racial animus, and that other officers then joined in the beating, are contradicted by the objective evidence. Plaintiff escaped from his handcuffs so that he could attack another inmate, Officer

Smith was no part of the escort and was not in the room where the incident began and thus could not have instigated it, the video reveals that Plaintiff was not beaten while he was on the ground, Plaintiff's various descriptions of the incident are contradictory, and the officers' use of force was reasonable to accomplish the goad of controlling Plaintiff and preventing him from harming anyone else.

Defendants argue that they are entitled to qualified immunity because no constitutional violation occurred and, even if a violation did occur it was not clearly established. Finally, Plaintiff is not entitled to punitive damages because no evidence exists of aggravated conduct that would support punitive damages.

**(3)** **Plaintiff's Response** (Doc. No. 50)[2]

Plaintiff was informed of the importance of responding to Defendants' motion as well as the legal standard applicable to summary judgment motions. See (Doc. No. 47).

Plaintiff filed an unverified Letter in Spanish that was postmarked June 3, 2019, with several hand-annotated documents attached. His Letter, which will be treated as a Response, states:

> I received these papers from the attorneys of defendants Holder and Smith, they are lying regarding the facts I am sending the statements they made were the committed mistakes the prisoner Alarcon was Never escorted towards the recreation by officer Turnumire he was escorted by a female officer "Tillman" and I am requesting the videos there were 2 cameras inside the block and 2 in the hallways, and I never resisted, they are lying in their different statements and they are covering up their actions for each other. Officer Smith did use force with violence and was uttering racist comments while they were handling me they were in control the whole time. One of the statements doesn't have the date. First they charged me with an A-1 and B1. The second a A-99 and B1.

(Doc. No. 50).

**(4)** **Defendants' Reply** (Doc. No. 51)

---

[2] An English translation of this document has been filed in this case. See (Doc. No. 53-4).

Defendants filed a Notice of Intent Not to File a Reply.

**(5)** **Evidence**[3]

    **(A)** **Affidavit of William Rogers** (Doc. No. 45-1)

Rogers is Assistant Superintendent of Custody and Operations at Lanesboro C.I. He is responsible for the custody and control of Incident Reports, and the statements, videos, and documents attached to those Incident Reports.

As a result of the June 12, 2015 incident in which Plaintiff attempted to attack another inmate, Incident Report 4865-15-341 was created by staff members at Lanesboro C.I. The Incident Report and supporting statements and videos are records that were made immediately following the incident, kept in the course of the regularly conducted business of NCDPS, and it is a regular practice of NCDPS to create and maintain these documents pursuant to NCDPS Policy and Procedures.

    **(B)** **Affidavit of Johnathan Holder** (Doc. No. 45-3)

Defendant Holder is a Correctional Sergeant and was assigned to Anson Unit on June 12, 2015. The Anson Unit is a restrictive housing unit in which inmates are assigned to individual cells based on disciplinary or safety concerns. The inmates remain in their cells except for approximately one hour per day when they are escorted to indoor or outdoor recreation.

On June 12, 2015 at approximately 9:04 AM, Defendant Holder responded to an emergency code in the nearby hallway. In the video of the incident (Anson Hallway to E.F.G.), Holder can be seen running towards Officer Bruce, Officer Smith, and Plaintiff from the doorway on the right at 9:04:10. By the time Defendant Holder reached the area, the other staff members had already disarmed Plaintiff and placed him on the floor to gain complete control over him.

---

[3] This section is not exhaustive.

Defendant Holder did not engage in any use of force with Plaintiff.

After Plaintiff was fully restrained, Defendant Holder walked behind the escort and can be seen on the video waiting off to the side against the wall on the left at 9:06:45 wearing a black short-sleeved shirt and black gloves. Defendant Holder then followed the group to the adjoining corridor.

At 9:26:00, Unit Manager Ingram and Defendant Holder removed Plaintiff from the hallway holding cell and took him back to the Nurse's Station. Unit Manager Ingram and Defendant Holder stayed with Plaintiff while he was seen by the Unit Nurse. They then escorted Plaintiff to the farthest hallway holding cell where they conducted a strip search to ensure Plaintiff was not concealing any other weapons or contraband. The search was conducted without incident. Afterwards, Plaintiff got dressed and they escorted him back to the Nurse's Station without incident. Unit Manager Ingram and Defendant Holder then escorted Plaintiff back to a cell without incident.

Defendant Holder had no further interactions with Plaintiff. At no point during the incident did Defendant Holder use any force on Plaintiff. At no point during the incident did Defendant Holder observe any other staff member punch or kick Plaintiff, or otherwise engage in any unlawful use of force against him.

**(C)** **Affidavit of Anthony K. Smith** (Doc. No. 45-4)

Defendant Smith is a Correctional Officer at Lanesboro and was assigned to the Anson Unit on June 12, 2015. At approximately 9:00 AM, Correctional Officer Raylene Bruce was escorting Plaintiff from his cell to outside recreation. At the same time, Correctional Officer Jonathan Turnmire was escorting Inmate Alacron from his cell to outside recreation. Defendant Smith was in the hallway bathroom when he heard shouts from the hallway.

In the video of the incident, Defendant Smith can be seen emerging from the hallway bathroom at 9:03:47. Defendant Smith responded to Officer Bruce to help her with Plaintiff who continued to resist her efforts to control and restrain him. Defendant Smith observed that Plaintiff had pulled one of his hands free from his handcuffs and was holding a handmade knife or shank. As Defendant Smith approached Plaintiff, Defendant Smith wrapped his arms around Plaintiff's upper body to keep him from attacking Smith or any of the responding officers. Another responding officer was able to disarm Plaintiff, then they placed him on the ground pursuant to training and NCDPS policy in order to better control him and place full restraints on him.

After he was fully restrained, Defendant Smith was part of the escort that picked Plaintiff up and carried him to the Nurse's Station so that he could be evaluated by medical staff. In the video, Defendant Smith can be seen holding Plaintiff's upper body by his right arm and shoulder as they left the hallway to the Nurse's Station.

Defendant Smith along with several other staff members stayed with Plaintiff while he was initially evaluated by the Unit Nurse. After this initial medical evaluation, Defendant Smith escorted Plaintiff to the nearest hallway holding cell and placed him inside. Defendant Smith had no further interactions with Plaintiff.

At no point during the incident did Defendant Smith use anything more than necessary minimum force to take control of Plaintiff so that he was not a threat to himself or others. The minimal amount of force that Defendant Smith used was done with the purpose to prevent him from attacking Inmate Alacron, and to prevent him from harming himself or other staff with the weapon he was still holding. Defendant Smith did not kick or punch Plaintiff or otherwise engage in any unlawful use of force against him, nor did he witness any other staff member do so.

**(D)** **Incident Report** (Doc. No. 45-2 at 4)

The Incident Report dated June 12, 2015 describes the incident as follows:

> On 06/12/2015 at approx: 0906 AM hours, Officer Turnmire reports, he was escorting Inmate … Alacron … from F-Pod to outside recreation. As I (Officer Turnmire) was escorting Inmate … Alacron … out of E-Pod, Inmate Alfonzo Caballero … slipped one hand out of his handcuffs and attempted to assault Inmate Alacron with a shank. Officer Bruce attempted to restrain Inmate Caballero as I (Officer Turnmire) escorted Inmate Alacron thru C37 slider and up the Anson corridor. At that time, a Code 4 was called, staff responded to assist Officer Bruce in restraining Inmate Caballero. Officer Bruce reported, while escorting inmate Caballero from E-Pod to the recreation cages on Anson Unit; Inmate Caballero attempted to assault Inmate Alacron by slipping one hand out of his handcuffs. Inmate Caballero was restrained until staff assistance arrived. Officer Goss reported he observed Inmate Caballero resisting to be handcuff by Officer Bruce and at that time he (Officer Goss) attempted a bent wrist technique so Inmate Caballero will drop the shank. Inmate was placed on the floor, restrained and escorted to medical….

(Doc. No 45-2 at 1).

The Report's Medical section that addresses injuries incurred and medical treatment provided states that, "[o]n 06/12/2015 at approx.: 0954, Nurse R. Vanscoten reported Inmate Caballero, Alfonzo was seen for a use of force assessment. Sustaining only minor injuries, treated, and released to custody staff." (Doc. No. 45-2 at 3).

The section entitled Review and Approval by Superintendent states that "… [i]t appears, based on the information provided, that all staff involved were in compliance with NCDPS Policy and Procedures." (Doc. No. 45-2 at 4). The Report attaches witness statements by several correctional staff, however, Inmate Alacron and Plaintiff did not provide statements. (Doc. No. 45-2 at 5-10). The Report's Contraband/Evidence Disposition section states, "4 inch metal shank sharpened with a cloth handle" taken from Plaintiff (Doc. No. 45-2 at 13).

### (E) **Grievances**

| | |
|---|---|
| 7/9/15 | Administrative Remedy Procedure written in Spanish, rejected 8/4/15 because "ARP procedures not followed – trying to submit two grievances at the same time. Only one grievance at a time can be filed." (Doc. No. 5 at |

7

5)

| | |
|---|---|
| 7/9/15 | <u>Administrative Remedy Procedure</u> written in Spanish, rejected 9/1/15 because "proper ARP not followed." (Doc. No. 5 at 8) |
| 9/11/15 | <u>Administrative Remedy Procedure</u> (4865-15-1679) [Page one illegible] "… Not even in the least has a green copy of one grievance stating it has been accepted been given to me. On 6/12/15 I incurred several bodily injuries due to Laneboro's failure to address my grievances along with their officers on Anson Unit [PHILLIP BONEY, Burk, Heh, Mack and McIntosh) continued harassment and deliberate attempts to have me harmed! cc: Director of Prisons George Solomon, cc: DPS Secretary Frank L. Perry, cc: Case Analyst Ms. A. Jums, cc: Grievance Board Director Finesse G. Couch, cc: Lanesboro Head Superintendent David R. Mitchell" requested remedy: "For Mr. Gazoo to report the findings of his so called investigation in response to my grievances that he confiscated, which result in at least the above mentioned officers being 'FIRED' and or the very least for me to be transferred to another prison for the safety of me and my family." (Doc. No. 5 at 4) |
| 11/20/15 | <u>Step One Response</u> (4865-15-1679) "Mr. Gazoo agrees that he did receive your grievances on or about March 2015. He states that the grievances were given to him based on the fact that they were written in Spanish and the task was his to find a way to answer your grievances. Mr. Gazoo did not keep your grievances from going to Raleigh, They were returned from Raleigh as is routine to be answered by the facility. Mr. Gazoo has nothing to do with the mail system. Mr. Gazoo states that he used Sergeant Parker to translate your grievances as he was the only Spanish speaking staff member available at the time. You were brought to the Unit Manager's office where Mr. Gazoo and Sgt. Parker discussed your grievances. Mr. Gazoo states that Sgt. Parker interpreted his questions to you and your responses to him. At that time, your only complaint was staff harassing you. You made no mention of you or your family being assaulted. Mr. Gazoo states that the Unit Manager advised in your presence that he would investigate your claims of harassment and would take appropriate action if he found your claims to be true. You then advised Mr. Gazoo that you were satisfied with this action and that you no longer needed to process the grievance. Your Unit Manager will be made aware of your new claims so they may be investigated. If it is determined that a transfer is warranted, appropriate action will be taken." (Doc. No. 5 at 2). |
| 12/18/15 | <u>Step Two Response</u> (4865-15-1679) "It has been determined that a meeting took place with you, Sgt. Parker, Mr. Ingram and Mr. Gazoo concerning the grievances you submitted written in Spanish. Sergeant Parker interpreted for you. At that meeting you agreed that the grievances were resolved based |

> on the fact that Mr. Ingram would look into your claims of being harassed by staff. Your claims that Mr. Gazoo blocked your grievances from going to Raleigh are unfounded. Mr. Gazoo was given the grievances to answer when they were returned to the facility from Raleigh." (Doc. No. 5 at 2).

## II. LEGAL STANDARDS

### (1) Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any

inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Celotex, 477 U.S. at 324; Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976); Fed. R. Civ. P. 56(e). However, a verified complaint, like the Amended Complaint that Plaintiff filed, is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979) (holding that the factual allegations contained in a verified complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment).

**(2)** **Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is mandatory. Id. at 524 (citation omitted); Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. A prisoner is not entitled to exhaust

administrative remedies during the pendency of an action. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). The PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. It is well settled that a grievance does not have to mention a defendant by name so long as the grievance gives the defendant fair notice of the claim. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008). However, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate. See Davidson v. Davis, 2015 WL 996629 at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004)).

**(3)** **Excessive Force**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501

11

U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009); see also Jarvis v. Securitas Sec. Servs. USA, 2012 WL 527597 (D. Md. Feb. 16, 2012).

**(4)     Discrimination**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

"A claim of racial discrimination is a grievous charge, which certainly can rise to constitutional dimensions; but absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va. 1974).

**(5)     Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The existence of qualified immunity "generally turns on the 'objective reasonableness' of the actions" without regard to the knowledge or subjective intent of

the particular official. Am. Civil Libs. Union of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 784 (4th Cir. 1993) (quoting Anderson v. Creighton, 483 U.S. 635, 639, 641 (1987)) (internal citations omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims by determining whether: (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. While the sequence of the steps set forth in Saucier is "often appropriate," it is not mandatory. Pearson, 555 U.S. at 236. Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Id.

To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. Thompson v. Commonweath of Va., 878 F.3d 89, 97 (4th Cir. 2017) (citing Pearson, 555 U.S. at 232). The analysis takes place against the backdrop of two dueling interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

To find a right is clearly established does not mean that "the exact conduct at issue [must] have been held unlawful for the law governing an officer's actions to be clearly established." Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001). Rather, the court's analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included

within more general applications of the core constitutional principle invoked." Id. at 362-63 (internal quotation omitted). The right at issue is "clearly established" for qualified immunity purposes if:

> [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640 (citation omitted).

To determine if the right in question was clearly established, the court first looks to cases from the Supreme Court, the Fourth Circuit, or the highest court of the state in which the action arose. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004). In the absence of "directly on-point binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." Booker v. South Carolina Dep't of Corr., 855 F.3d 533, 543 (4th Cir. 2017); Owens, 372 F.3d at 279 ("the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity."). Ordinarily, the unlawfulness of government conduct must be apparent in light of pre-existing law. White v. Pauly, 137 S.Ct. 548, 442 (2017). However, a "general constitutional rule … may apply with obvious clarity ... even though the very action in question has not previously been held unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002) (citing United States v. Lanier, 520 U.S. 259, 271 (1997)). Therefore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 741.

**(6)** **Punitive Damages**

A jury may be permitted to assess punitive damages in a § 1983 action when the defendant's conduct is shown to be "motivated by evil motive or intent, or when it involves

reckless or callous indifference to the federally protected rights of others" Smith v. Wade, 461 U.S. 30, 51 (1983).

### III. DISCUSSION

**(1)** **Exhaustion**

Defendants argue that Plaintiff failed to exhaust his administrative remedies because the grievances he filed do not satisfy the PLRA's requirements.

Plaintiff filed three grievances in support of exhaustion; two were rejected for failure to comply with NCPLS's administrative remedy procedure, (Doc. No. 5 at 5, 8), and the third was not exhausted through the third-step appeal level, (Doc. No. 5 at 2-4). Based on the records before the Court, it appears that Plaintiff failed to properly assert the claims at issue in this case by fairly presenting them to NCDPS's through its administrative remedy procedure.[4] Plaintiff has failed to argue that administrative remedies were unavailable to him.

Therefore, Defendants will be granted summary judgment for lack of exhaustion of administrative remedies pursuant to the PLRA.

**(2)** **Excessive Force & Discrimination**

Defendants argue that Plaintiff's self-serving allegations lack support and credibility and should be rejected. Plaintiff claims he did nothing wrong, posed no threat to anyone, and that Officer Smith instigated an incident based on racial animus and then beat him along with other officers.

Defendants have come forward with admissible objective evidence, including videos of the incident, that flatly refute Plaintiff's self-serving and unsupported claims. The videos demonstrate that Plaintiff himself created a dangerous situation and was a threat to staff and other inmates by

---

[4] The Court takes judicial notice of NCDPS's administrative remedy procedure. See Fed. R. Ev. 201.

resisting his escort and attempting to attack another inmate. The videos also contradicts Plaintiff's claims that he was kicked and punched while fully restrained. The videos depict staff responding to the incident with a minimal level of force. Plaintiff has failed to rebut Defendants' characterizations of each of their locations and actions during the incident. Plaintiff has not attempted to rebut Defendants' evidence with anything other than his own unsupported and self-serving allegations which are blatantly contradicted by the record and are rejected.[5] See Smith v. Ozmint, 578 F.3d 246, 254 (4th Cir. 2009) ("Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'") (citing Scott v. Harris, 550 U.S. 372, 380 (2007)). Accord Solomon v. Felker, No. 08-cv-2544, 2015 WL 1469165, at "7 (E.D. Calif. Mar. 27, 2015) ("The factual context of plaintiff's claim of excessive force is implausible because the injuries described in plaintiff's medical records do not support his claim that he was beaten."); Lanier v. Smith, No. 3:08-cv-833, 2009 WL 3853170, at *8 (M.D. Fla. Nov. 18, 2009) (stating that "the medical evidence is consistent with the amount of force Defendants allege they used to restrain Plaintiff and restore order and is inconsistent with Plaintiff's allegations" in his verified complaint). Although the videos do not include an audio component, the discrimination claims likewise fails. Plaintiff's claim that the incident at issue was instigated by Defendant Smith's racial slurs cannot be true because Defendant Smith was not present when the incident began, and therefore, the alleged discrimination could not be at the root of the excessive force incident because no excessive use of force occurred.

---

[5] Although the Complaint is verified, Plaintiff has failed to verify his summary judgment Response or come forward with any other evidence to rebut Defendants' evidence in support of the Motion for Summary Judgment.

Defendants' Motion for Summary Judgment will therefore be granted on Plaintiff's excessive force and discrimination claims.

**(3)** **Qualified Immunity**

Defendants have asserted a qualified immunity defense. Plaintiff has failed to overcome that defense by showing facts that make out a violation of a clearly established constitutional right at the time of the Defendants' alleged misconduct. No constitutional violation occurred because the use of force by Defendant Smith was objectively reasonable and necessary to control Plaintiff and prevent him from assaulting another inmate or staff. The video shows that Defendant Smith did not beat Plaintiff, rather, he wrapped his arms around Plaintiff and took him to the floor where he could be controlled. This minimal amount of force used during an inmate-on-inmate assault is not the type of force that correctional officers would understand to violate any clearly established rights.

The Court has determined as a matter of law that no constitutional violation occurred and that Defendants did not violate a clearly established right, therefore, qualified immunity applies and Defendants' Motion for Summary Judgment will also be granted on this basis.

**(4)** **Punitive Damages**

Defendants argue that Plaintiff is not entitled to punitive damages because there is no evidence of any aggravated conduct.

Defendants have refuted Plaintiff's allegations that they used excessive force and Plaintiff does not present anything other than his own self-serving statements that Defendants acted with recklessness, malice, or evil intent that would support an award of punitive damages. The video, Defendants' affidavits, and staff statements demonstrate that the officers did not act with indifference, malice, or bad faith, but rather, they were forced to respond in good faith to an assault.

There is no objective evidence that Defendants acted with the requisite intent to support a claim of punitive damages and, therefore, Defendants will be granted summary judgment on this basis.

## IV. PENDING MOTION

Plaintiff filed a document in Spanish that was post marked June 10, 2019 and docketed on June 12, 2019 as a Motion/Request for Review of Three Videos. (Doc. No. 52). Plaintiff contends that Defendants Holder and Smith are lying, that Officer Tillman was the one escorting them, that Plaintiff never resisted officers, and that Holder and Smith told other prisoners that Plaintiff is a snitch. (Doc. No. 52 at 1). Plaintiff also requests an attorney.

This filing appears to be in the nature of a supplemental response. Plaintiff's self-serving and unsupported contentions fail to refute Defendants' Motion for Summary Judgment and are rejected. Plaintiff' request for an attorney is denied as moot as summary judgment is granted in favor of Defendants, and the case is closed.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is granted, Plaintiff's Motion is denied, and the case is closed.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 37), is **GRANTED**.

2. Plaintiff's Motion/Request for Review of Three Videos, (Doc. No. 52), is **DENIED**.

3. The Clerk of Court is instructed to close this case.

Signed: June 28, 2019

Frank D. Whitney
Chief United States District Judge